```
            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF GEORGIA
                   ATLANTA DIVISION
```

NUCO INVESTMENTS, INC.,

    Plaintiff,

    v.

HARTFORD FIRE INSURANCE CO.,

    Defendant.

CIVIL ACTION

NO. 1:02-CV-1622-CAP

**O R D E R**

This matter is now before the court on the defendant's motion for summary judgment [Doc. No. 255].

**I.  Factual Background**

In this action, the plaintiff, NUCO Investments, Inc. ("NUCO"), seeks declaratory and monetary relief against the defendant, Hartford Fire Insurance Company ("Hartford"), in connection with property damage at NUCO's hotel.  NUCO is the owner of a Days Inn property located in Savannah, Georgia.  At the time of the damage, the hotel property was an insured location covered by a policy issued by Hartford ("Policy").  The Policy, which was effective July 2, 2000, through July 2, 2001, insured against "all risk of direct physical loss of or damage to" the hotel and other covered property.  Policy at 9, Ex. A to Amended Compl. [Doc. No. 3].

In October 2000, NUCO received reports suggesting the presence of potential property damage to the Savannah hotel caused by mold. NUCO cooperated with local health officials who hired Air Quality Services, Inc. ("AQS"), to inspect the property. AQS conducted an inspection and issued a report in November 2000 confirming mold damage in the hotel's conference room and basement. NUCO retained consultants and outside counsel to investigate the damage, to obtain evidence of the cost of repairing the damage, and to submit a claim including a detailed proof of loss to Hartford.

In November 2000, NUCO forwarded notice of the mold damage claim to Hartford. In a reservation of rights letter dated November 21, 2000, Hartford advised NUCO that there might be coverage issues pending investigation of NUCO's claim. Hartford's consultants inspected the hotel property during several visits in the spring and summer of 2001.

In May 2001, NUCO hired International Environmental Services and Kimley-Horn & Associates to survey the mold damage. Their inspection confirmed mold damage at the hotel property. NUCO, pursuant to the Policy, hired Public Adjustment Bureau ("PAB")

to prepare a sworn proof of loss. On March 20, 2002, PAB submitted a sworn proof of loss to Hartford estimating that the cost to repair the mold damage would be in excess of $5 million.

NUCO filed this action on June 12, 2002, seeking a declaration of coverage and damages for breach of contract [Doc. No. 1]. Hartford contends that at the time the suit was filed, it was still investigating the claim.

In a prior motion for summary judgment, Hartford took the position that an express exclusion for mold damage was inadvertently omitted from the Policy on two separate occasions and the exclusion should be added to the Policy through reformation of the contract. The court determined that there was a question of fact as to whether this exclusion was intended to be a part of the Policy by the parties, and, therefore, the motion for reformation was denied.

## II. Summary Judgment Motion

Hartford has now filed a second motion for summary judgment arguing that (1) NUCO's claim for diminution of value is excluded by the Policy and (2) NUCO's claims are barred by other exclusions contained in the Policy. In response, NUCO argues that (1) diminution in value is an element of replacement cost and therefore recoverable under the Policy and (2) the

exclusions cited by Hartford do not bar the damages sought in this case.

**A. Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 156, 90 S. Ct. 1598, 1608 (1970); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).  The moving party's burden is discharged merely by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).  In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Clifton, 74 F.3d at 1090.  Once the moving party has adequately supported its motion, the nonmovant then

has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S. Ct. 2505, 2511 (1986). The applicable substantive law will identify those facts that are material. Id., 477 U.S. at 247, 106 S. Ct. at 2510. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. Id.

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. Id. In order for factual issues to be "genuine" they must have a real basis in the record. Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Id. (citations omitted).

### B. Diminution of Value

Hartford is seeking summary judgment on NUCO's claim for diminution in value arguing that (1) NUCO may not assert claims for both replacement costs and diminution in value and (2) diminution in value is a consequential loss and is excluded by the Policy.  In response to the motion, NUCO contends that, under Georgia law and the terms of the Policy, diminution in value is (1) an element of replacement cost and (2) a direct physical loss.

#### 1. Diminution in Value as a Component of Replacement Costs

In the case at hand, the Policy insured against "all risk of direct physical loss of or damage to property described herein except as hereinafter excluded."  Policy at 9, Ex. A to Amended Compl. [Doc. No. 3].  Under the heading "Valuation," the Policy stated:

> In case of loss the basis of adjustment unless otherwise endorsed herein shall be as follow[s]:
>
>> Buildings . . . at replacement cost at the time and place of loss, if replaced, otherwise Actual Cash Value.

Policy at 13, Ex. A to Amended Compl. [Doc. No. 3].

The parties agree that this valuation clause allows the insured to elect whether to receive "replacement cost" or

"actual cash value."[1] Additionally, the parties agree that "actual cash value" is measured by the "difference between the value of the property immediately before the injury and its value immediately afterwards." See American Casualty Company of Reading, PA v. Parks-Chambers, Inc., 142 S.E.2d 275, 277 (Ga. Ct. App. 1965). The only dispute between the parties is whether the measure of "replacement cost" includes diminution of value.

The Georgia Supreme Court addressed this issue in the context of an automobile insurance policy in State Farm Mutual Automobile Insurance Co. v. Mabry, 556 S.E.2d 114 (Ga. 2001) when it was asked to decide whether an insurance policy that promises to pay the insured for "the loss" caused by damage to the insured vehicle obligated the insurer to restore the vehicle to its pre-loss value as opposed to only its pre-loss condition. After a thorough review of 75 years of Georgia case law, the court concluded:

> . . . value, not condition, is the baseline for the measure of damages in a claim under an automobile insurance policy in which the insurer undertakes to

---

[1] The court notes that Hartford has taken the position NUCO has elected replacement costs rather than actual cash value. NUCO on the other hand contends that its options remain open with regard to the election of replacement costs or actual cash value. This issue is not currently before the court; thus, this dispute will not be addressed in this order.

> pay for the insured's loss from a covered event, and that a limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value.

Id. at 121.  The court went on to reject the law of other jurisdictions and adhere to contract interpretation as established by prior Georgia decisions:

> The rationale of those [prior Georgia] cases remains solid: the insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value. That interpretation has stood for 75 years in Georgia and has become, therefore, part of the agreement between the parties when they enter into a contract of insurance which includes the promise to pay for the insured's loss. Thus, our holding in this case that State Farm is obligated to pay for diminution in value when it occurs is based in reason, precedent, and the intent of the parties. Recognition of diminution in value as an element of loss to be recovered on the same basis as other elements of loss merely reflects economic reality.

Id. at 122 (citations omitted).  Thus, the court held that, if the insured can only be made whole by the payment of diminution in value in addition to repairs, such payment was required under the language of the policies at issue.

Hartford argues that the holding in Mabry should be limited to automobile policies and not applied to a policy insuring real property.  But, in setting forth the principles of insurance

8

contract interpretation under Georgia law, the court in Mabry does not specify automobile insurance contracts. This court concludes that the Georgia Supreme Court was concerned not with the type of property insured, but with the measure of damages that an insurer is obligated to pay when a policy provides for replacement cost.

Additionally, Hartford contends that the holding in Mabry is not controlling in this case because the insurer does not have the election of paying actual cash value or replacement cost. The parties agree that under the terms of the Policy, the insured has the right of electing whether it will receive actual cash value or replacement cost. This is merely a difference without distinction. The decision in Mabry focused on the economic reality of "loss." The fact that the insured rather than the insurer may exercise the election of how the damaged property will be valued does not does not change the interpretation of what is included in a "loss."

The Georgia Supreme Court has held that when a policy undertakes to pay the insured for a loss, the insurer is required to restore the insured to its position in terms of pre-loss value. Therefore, this court concludes that under the

terms of the Policy, diminution of value is an element of "replacement cost."

### 2. Consequential Damages

Hartford next argues that NUCO's claim for diminution in value is actually a claim for consequential damages and, therefore, that claim is not covered under the terms of the Policy. According to Hartford, Georgia courts have not determined the issue, but the majority of other state courts have held that diminution in value is not "direct physical loss or damage" but rather is consequential damage. Hartford points out that the Policy insures against only "direct physical loss of or damage to property." In addition, the Policy contains an exclusion that specifically precludes recovery of consequential damages.[2] Hartford urges this court to adopt the reasoning of those courts that have found diminution in value to be consequential damage and hold that NUCO's claim for diminution in value is therefore not covered under the Policy. See Policy at 9, 12, Ex. To Amended Compl. [Doc. No. 3].

---

[2] The exclusion states "This policy does not insure: . . . Against delay or loss of market or loss of use or other consequential loss unless specifically insured elsewhere [in] this policy."

10

The court notes that the Policy does not expressly exclude diminution in value. Also, the exclusion of consequential damages does not specifically refer to diminution in value. There is no authority in Georgia to indicate that this element of loss is not "direct loss or damage." In fact, the Georgia Supreme Court, as discussed above, held that "what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value." Mabry, 556 S.E.2d at 122. Therefore, this court is not persuaded by Hartford's argument that diminution in value is a consequential loss. Accordingly, Hartford is not entitled to summary judgment on NUCO's claim for diminution in value.

### C. Other Exclusions[3]

Additionally, Hartford argues that NUCO's claims based on mold damage are barred by certain express exclusions contained

---

[3] Originally, Hartford argued that mold damage was expressly excluded by language contained in a document that was inadvertently left out of the Policy. This court has found, however, that whether the parties intended to include an express exclusion for mold is a question of fact for the jury. At issue in the present motion for summary judgment is whether other exclusions contained in the Policy operate to bar NUCO's claims. For purposes of this motion for summary judgment, the court, in construing the facts most favorably to the non-movant, will assume the mold exclusion was not intended to be a part of the Policy.

in the Policy.  Hartford directs the court to five specific exclusions:

> This policy does not insure:
>
> Against the cost of making good defective design or specification, faulty material, or faulty workmanship, however, this exclusion shall not apply to loss or damage resulting from defective design or specifications, faulty material, or faulty workmanship . . .
>
> Against mechanical breakdown unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage . . .
>
> Against ordinary wear, tear, or gradual deterioration unless other loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage . . .
>
> Against normal settling or shrinkage of walls, floors, or ceilings unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage . . .
>
> Against inherent vice, latent defect, smog, rust, wet or dry rot, corrosion or oxidation.

Policy at 9-12, Ex. A to the Pl.'s First Amended Compl. [Doc. No. 3].

Under Georgia law, "all exclusions from coverage sought to be invoked must be strictly construed."  <u>Tifton Machine Works, Inc. v. Colony Insurance Co.</u>, 480 S.E.2d 37, 39 (Ga. Ct. App. 1996).  Furthermore, "insurance contracts are to be read in

12

accordance with the reasonable expectations of the insured where possible." Burgess v. Allstate Insurance Co., 334 F.Supp.2d 1351, 1359 (N.D. Ga. 2003)(citing Richards v. Hanover Insurance Co., 299 S.E.2d 561, 563 (Ga. 1983)); Broome v. Allstate Insurance Co., 241 S.E.2d 34, 35 (Ga. Ct. App. 1977)). Accordingly, this court will analyze each exclusion urged by Hartford by construing each narrowly and, if possible, giving deference to the expectations of NUCO.

### 1. Defective Design

Hartford contends that NUCO's claim for damages to replace the ventilation system, air conditioners, walls, wall coverings, and the addition of a totally new exhaust system is expressly excluded under the Policy because these "replacements" are NUCO's attempt to solve a design problem. This is an overreaching interpretation of NUCO's claim.

The court notes that NUCO denies the mold problem is the result of defective design or faulty workmanship. But even if design or workmanship problems were found to be a proximate cause of the mold damage for which NUCO seeks recovery, under the plain language of the Policy, NUCO can recover damages for loss or damage resulting from defective design, faulty material, and faulty workmanship. In other words, had NUCO filed a claim

13

prior to the growth of mold seeking replacement of the ventilation system, air conditioners, walls, wall coverings, or the addition of a totally new exhaust system because these items were defectively designed, this claim would be barred by the exclusion at issue here.  But, as the Policy clearly states, resulting damage is covered.  Thus, even if defective design or faulty workmanship contributed to the growth of mold, damage to the ventilation system, air conditioners, walls, wall coverings, or the exhaust system is "resulting damage" and is not excluded by the plain language of the Policy. See Blaine Construction Corp. v. Insurance Co. of North America, 171 F.3d 343, 349-50 (6th Cir. 1999).  Therefore, Hartford is not entitled to summary judgment based on this exclusion.

### 2. Mechanical Breakdown

Hartford contends that the "mechanical breakdown" exclusion bars NUCO's claims because water was improperly draining from the HVAC units.  The court questions whether the method of drainage from the HVAC units is a "mechanical breakdown" under the terms of the Policy.  But, assuming arguendo that the drainage method was a mechanical breakdown, this exclusion, like the defective design exclusion discussed above, plainly states that if loss or damage from a peril insured under the Policy

ensues from a mechanical breakdown, the loss or damage is covered.  Thus, even if there was a mechanical breakdown in the drainage system of the HVAC units, any resulting damage suffered by NUCO is covered.  Accordingly, Hartford is not entitled to summary judgment based on this exclusion.

### 3. Ordinary Wear and Tear

Hartford contends that most of NUCO's damages are caused by ordinary wear and tear or gradual deterioration.  Hartford specifies numerous instances of "gradual deterioration of the hotel" that increased moisture in the walls.  But, like the exclusions discussed above, the wear and tear exclusion contains an ensuing loss provision.  Thus, even if the ordinary wear and tear and gradual deterioration of various fixtures in the hotel contributed to an increase in moisture in wall cavities, which in turn allowed mold to grow, the mold damage is an ensuing loss that is not excluded by the Policy.  Therefore, Hartford is not entitled to summary judgment based on this exclusion.

### 4. Normal Settling or Shrinkage of Walls, Floors, or Ceilings

Hartford argues that the plaintiff's claim for damages are excluded from coverage because the property suffered a settling of walls caused by deterioration of the mortar in the brick,

15

thereby allowing moisture and humid air inside, which condensed and formed mold in the walls.  This exclusion also contains an ensuing loss provision identical to those discussed above.  As such, NUCO is not barred from seeking damages caused by mold even if the mold grew as a result of the settling of walls.  Accordingly, Hartford is not entitled to summary judgment based on this exclusion.

> **5. Inherent Vice, Latent Defect, Wet or Dry Rot, Rust, and Oxidation**
>
> **(a) Inherent Vice or Latent Defect**

Hartford argues characteristics of brick and the entire system of moisture control used by NUCO are "inherent vices" or "latent defects" that resulted in the plaintiff's damages, and, therefore, the damages are subject to exclusion.  While the court recognizes that there is evidence that the type of wall covering, water seeping through brick, and lack of exhaust contributed to the growth of mold in the walls of the hotel, the court cannot conclude that these conditions are, as a matter of law "inherent vices" or "latent defects."  In this case, NUCO's damages were caused by mold, which grew as a result of moisture.  The fact that numerous conditions converged to increase moisture in the walls of the hotel resulting in mold damage is simply

16

insufficient to allow the court to conclude that each and every one of the these conditions is inherent vice or latent defect. Doing so would be an overly broad construction of this exclusion, which is prohibited by Georgia law. See <u>Kerr-McGee Co. v. Georgia Casualty and Surety Co.</u>, 568 S.E.2d 484, 486 (Ga. Ct. App. 2002).

### (b) Rot and Rust

According to Hartford, a portion of NUCO's claim is for rot of carpeting and the tacking below carpeting, as well as rust on electrical nails. The exclusion applicable to rot and rust does not contain an ensuing loss clause. Therefore, rot and rust are excluded perils under the plain language of the Policy. As such, Hartford is entitled to summary judgment with regard to NUCO's claim for rust on electrical nails and rot of carpeting or tacking below the carpeting.

**III.    Conclusion**

The court, in accordance with the foregoing, DENIES IN PART and GRANTS IN PART Hartford's motion for summary judgment [Doc. No. 255].

The parties are DIRECTED to file a proposed consolidated pre-trial order pursuant to Local Rule 16.4 within 30 days of entry of this order.

**SO ORDERED**, this <u>5</u>th day of December, 2005.

<u>/s/ Charles A. Pannell, Jr.</u>
CHARLES A. PANNELL, JR.
United States District Judge